IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED MARTIN, | No. C 12-3771 YGR (PR) |
| Plaintiff, | **ORDER (1) DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S SUR-REPLY; (2) DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND RENEWED MOTION FOR APPOINTMENT OF COUNSEL; (3) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO THE DELIBERATE INDIFFERENCE CLAIMS; AND (4) REFERRING REMAINING EXCESSIVE FORCE CLAIM TO PRO SE PRISONER SETTLEMENT PROGRAM** |
| v. | |
| ANTHONY HEDGPETH, et al., | |
| Defendants. | |
| | (Dkts. 44, 45, 61, 65) |

## INTRODUCTION

Plaintiff, a former prisoner at Salinas Valley State Prison ("SVSP"), filed this *pro se* civil rights action under 42 U.S.C. § 1983 alleging the use of excessive force against him by a correctional officer at SVSP and the denial of adequate medical care for the resulting injuries by several SVSP nurses and doctors. On September 3, 2014, Plaintiff was released from the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Dkts. 65, 66.[1] Plaintiff seeks monetary damages from Defendants.

Before the Court are Defendants' motion for summary judgment (Dkt. 45), Defendants' motion to strike Plaintiff's sur-reply (Dkt. 61), and Plaintiff's motion for reconsideration and renewed motion for appointment of counsel (Dkts. 44, 65). Having read and considered the papers submitted by the parties, Defendants' motion for summary judgment is GRANTED, Defendants' motion to strike Plaintiff's sur-reply is DENIED, and Plaintiff's motion for reconsideration and renewed motion for appointment of counsel are DENIED.

## PROCEDURAL BACKGROUND

On July 18, 2012, Plaintiff filed the instant action against SVSP Warden A. Hedgpeth, Correctional Officer ("C/O") R. Morring, Registered Nurses Gee, Walker, Will, and LaDuke, and

---

[1] Plaintiff informed the Court that his release date was on September 3, 2014. (Dkts. 65 at 3, 66 at 1.) Plaintiff has since confirmed that he has been released from prison and he has filed a notice of change of address, as explained below. Dkt. 67.

1  Drs. Bowman, Bridgnell,[2] and Gamboa, alleging that they had all violated his Eighth Amendment
2  rights (Dkt. 1).

3  On January 10, 2013, the Court found Plaintiff's claims against Defendants Morring,
4  Bowman, Gamboa, Bridgnell, Walker, and LaDuke cognizable as violations of the Eighth
5  Amendment, and issued its Order of Service[3] (Dkt. 5). The Court also dismissed all claims against
6  Warden Hedgpeth on the basis that Plaintiff failed to provide any specific allegations against him in
7  his complaint.

8  On June 14, 2013, the Court denied Plaintiff's motion for appointment of counsel to
9  represent him in this action (Dkt. 32).

10  On August 12, 2013, the Court denied Plaintiff's motion for a continuance of proceedings
11  and his second motion for appointment of counsel (Dkt. 42).

12  Thereafter, Plaintiff filed a motion for reconsideration of the Court's Order denying his
13  second request for appointment of counsel as well as a renewed motion to appoint counsel (Dkts.
14  44, 65). At this time, Plaintiff's request for reconsideration and third request for the appointment of
15  counsel are DENIED without prejudice (Dkts. 44, 65). This does not mean, however, that the Court
16  will not *sua sponte* consider appointment of counsel at a later juncture in the proceedings; i.e., after
17  this case has been referred to a magistrate judge for a settlement conference, as explained below. If
18  this matter does not settle and if the Court decides that appointment of counsel is warranted at that

---

[2] Defendant Bridgnell's name was mis-spelled as "Bridgewell" in Plaintiff's pleadings and in previous Orders; however, the Court now uses the correct spelling, "Bridgnell." (Dkt. 45 at 1.)

[3] The Court ordered service of the complaint and directed Defendants to respond. However, service was ineffective on Defendants Morring, Walker, Will, Gee, and LaDuke. In an Order dated January 30, 2013, the Court ordered Plaintiff to provide current addresses for these unserved Defendants within twenty-eight days. Thereafter, Plaintiff provided the requested information as to Defendants Morring, Walker, and LaDuke, who have all since been served. On March 28, 2013, the Court granted Plaintiff an extension of time to provide the necessary information as to Defendants Will and Gee within twenty-eight days. However, twenty-eight days passed, and Plaintiff did not respond to the Court's request. In an Order dated June 25, 2013, the Court dismissed *sua sponte* the claims against Defendants Will and Gee without prejudice under Federal Rule of Civil Procedure 4(m), which states that if a complaint is not served within 120 days from the filing of the complaint, it may be dismissed without prejudice for failure of service. Dkt. 33 at 1-2.

2

1  time, it will *sua sponte* seek volunteer counsel to agree to represent Plaintiff *pro bono*.[4]

2  On October 22, 2013, Defendants Bowman, Gamboa, Bridgnell, Walker and LaDuke
3  ("Defendants") filed the instant motion for summary judgment on the grounds that they did not act
4  with deliberate indifference to Plaintiff's serious medical needs, and that they are entitled to
5  qualified immunity (Dkt. 45). Meanwhile, Defendant Morring did not join in this motion, and
6  informed the Court that Plaintiff's excessive force claim against him is not appropriate for
7  resolution by summary judgment. (Dkt. 45 at 1 note 1.)

8  On February 14, 2013, Plaintiff filed an opposition to Defendants' motion for summary
9  judgment (Dkt. 58). On February 28, 2014, Defendants filed their reply (Dkt. 59). On March 27,
10 2014, Plaintiff filed an additional reply (Dkt. 60), which is construed as his sur-reply.

11 On March 28, 2014, Defendants filed a motion to strike Plaintiff's sur-reply (Dkt. 61) on the
12 ground that Plaintiff did not seek permission to file a sur-reply, as required by the Northern District
13 of California's Local Rules. Specifically, Civil Local Rule 7-3 provides, in pertinent part, that
14 "once a reply is filed, no additional memoranda, papers or letters may be filed without prior court
15 approval." Civ. L. R. 7-3(d). Although Plaintiff's sur-reply is unauthorized, the Court notes
16 Plaintiff is proceeding *pro se*. Defendants have been provided sufficient notice and an opportunity
17 to respond; therefore, no prejudice is apparent. Good cause appearing, Defendants' motion to strike
18 is DENIED (Dkt. 61), and Plaintiff's sur-reply will be considered as part of his opposition.

19 The Court will now resolve the pending motion for summary judgment below.

## DISCUSSION

**I.      Factual Background**

The following facts are undisputed unless otherwise indicated.

On December 5, 2009, Plaintiff, who was housed at SVSP, was involved in an altercation
with another prisoner, inmate Knox. (Compl. at 3.)[5] Defendant Morring ("C/O Morring") was

---

[4] On September 15, 2014, Plaintiff informed the Court that he is "in the process of obtaining legal counsel to represent [him] in this case." Dkt. 67 at 1. If Plaintiff is successful in doing so, he shall inform the Court, as directed below.

[5] Page numbers refer to those assigned by the Court's electronic filing system and not those assigned by the parties.

3

1  among the officers that responded to the altercation. (*Id.*) Plaintiff states that he was on the ground
2  and had ceased fighting with inmate Knox when C/O Morring dispensed his pepper spray on
3  Plaintiff, spraying Plaintiff's face. (*Id.*) Plaintiff states the he told C/O Morring, "I give-up," and
4  requested medical attention because the pepper spray made it difficult for Plaintiff to breathe. (*Id.*)
5  Plaintiff states that C/O Morring "became angry and yelled, '. . . that's what you get. Fuck You,
6  you don't [d]eserve shit. [Y]ou just lay there and shut up!'" (*Id.* at 3, 5.) Plaintiff states that C/O
7  Morring then told him to roll over, and Plaintiff complied. (*Id.* at 5.) C/O Morring then "bent [the]
8  thumb on [Plaintiff's] left hand back until the thumb broke." (*Id.*) Plaintiff maintains that he did
9  not resist C/O Morring throughout the incident. (*Id.*)

10  Defendants do not dispute the aforementioned facts in the instant motion for summary
11  judgment. As mentioned above, Defendant Morring states that the excessive force claim against
12  him is not appropriate for resolution by summary judgment. (Dkt. 45 at 1 note 1.)

13  Plaintiff asserts that after the alleged excessive force incident on December 5, 2009,
14  Licensed Vocational Nurse Rodriguez filled out a CDCR Form 7254 (request for chronic care
15  follow-up) informing staff in the Administrative Segregation ("Ad-Seg") Unit that Plaintiff had
16  sustained an injury. (Compl. at 7.) Plaintiff asserts that Defendant LaDuke ("Nurse LaDuke"),
17  received the CDCR Form 7254 when Plaintiff arrived in Ad-Seg , recognized that Plaintiff had an
18  injury, and filled out a CDCR Form 7362 (request for medical treatment). (*Id.*) However, Plaintiff
19  alleges that the request (CDCR Form 7362) was never submitted to the medical department,
20  causing Plaintiff's thumb to remain untreated for a week, while he remained in Ad-Seg. (*Id.*)
21  Plaintiff reports that during that week, he made repeated requests for treatment to Nurse LaDuke
22  and Defendant Walker ("Nurse Walker"), but his requests were ignored. (*Id.*) Plaintiff states that
23  at the disciplinary hearing held at the end of that week, Chief Hearing Officer Hendricks learned of
24  Plaintiff's injury and informed SVSP medical staff that Plaintiff needed to be seen immediately.
25  (*Id.*)

26  On December 10, 2009, Nurse Walker examined Plaintiff. (Walker Decl. ¶ 3.) Nurse
27  Walker contacted Defendant Bowman ("Dr. Bowman") about Plaintiff's injury, and Dr. Bowman
28  ordered an x-ray of Plaintiff's hand. (*Id.*) The x-ray was taken on-site at SVSP that same day;

4

1  however, the results were sent to an off-site radiologist for review.  (Dkt. 47, Gamboa Declaration
2  ("Gamboa Decl.") ¶ 4, Ex. A at 5.)  Plaintiff was never examined by Dr. Bowman, who only placed
3  the order for the x-ray.  (Dkt. 48, Bowman Declaration ("Bowman Decl.") ¶ 3.)  Dr. Bowman states
4  that there is no indication that he saw or could have seen the radiologist's report about the x-ray on
5  December 10, 2009.[6]  (*Id.*)  Dr. Bowman adds:  "Because there was nothing significant, urgent or
6  life-threatening about [Plaintiff's] five-day injury, it would have been appropriate to send him back
7  to his cell without being examined by a doctor."  (*Id.*)  Dr. Bowman states that had the radiologist
8  found "something that was urgent" upon reviewing the x-ray, a doctor would have been notified.
9  (*Id.*)  Plaintiff confirms that he was never examined by Dr. Bowman nor did he witness Dr.
10 Bowman review the x-rays.  (Dkt. 54, Nygaard Declaration ("Nygaard Decl."), Ex. A at 4:13-6:25.)

12     On December 11, 2009, Defendant Gamboa ("Dr. Gamboa") examined Plaintiff following
13 the x-ray, and recorded on a CDCR Form 7230-M (interdisciplinary progress notes) that Plaintiff's
14 left hand was "sprained."  (Compl. at 7.)  Plaintiff states that Dr. Gamboa sent him back to his cell
15 without sufficiently treating Plaintiff's injury and thus causing him pain.  (*Id.* at 8.)  Nurse Walker
16 was present during this examination.  (Dkt. 49, Walker Declaration ("Walker Decl.") ¶ 4.)  Dr.
17 Gamboa confirms that he diagnosed Plaintiff's injury as a sprain based on a "visual examination of
18 [Plaintiff's] hand."  (Gamboa Decl. ¶ 5.)  Dr. Gamboa claims that he did not review the x-ray or the
19 radiologist's report because it had not yet been prepared.  (*Id.*)  Dr. Gamboa then prescribed
20 ibuprofen, "a non-steroidal anti-inflammatory drug (NSAID) to reduce the inflammation and
21 relieve [Plaintiff's] pain."  (*Id.*)  Dr. Gamboa states that "[i]t is generally known in the medical
22 community that NSAIDs should be the first line of treatment for a sprain."  (*Id.*)  In addition, Dr.
23 Gamboa noted that Plaintiff was already taking Tramadol, an opioid pain medication, to manage his
24 pain.  (*Id.*)

25     Plaintiff asserts that after his December 11, 2009 appointment, he continued to inform
26 Nurses Walker, Will, Gee, and LaDuke that his hand was swollen and causing him considerable

---

[6] The record shows that the radiologist's report was "[e]lectronically signed by James A. Kowalski, M.D." on December 17, 2009.  (Gamboa Decl., Ex. A at 5.)

5

pain, but Nurses Walker, Will, Gee, and LaDuke ignored Plaintiff's requests for assistance "until about the 22nd of December, when [he] was finally allowed to see an M.D. again."[7] (Compl. at 8.)

On December 22, 2009, Dr. Gamboa examined Plaintiff again and, during this visit, discovered that Plaintiff's thumb was fractured, not sprained (his previous diagnosis). (*Id.*) Plaintiff states that Dr. Gamboa "noticed immediately that the hand was badly swollen" and ordered a copy of the x-ray. (*Id.*) Dr. Gamboa states that by the December 22, 2009 appointment, he had received the radiologist's report showing that Plaintiff had a "subtle minimally displaced corner fracture base proximal phalanx of the thumb." (Gamboa Decl. ¶ 6, Ex. A at 5, 6.) Dr. Gamboa then claims that because at that time he "knew that [Plaintiff] had sustained a fracture," he ordered the prison's Correctional Treatment Center ["CTC"] to have a "spica splint applied to [Plaintiff's] left thumb," and referred Plaintiff to be seen by an orthopedist. (Gamboa Decl. ¶ 6.)

After being seen by Dr. Gamboa, Plaintiff states that he was then sent to Defendant Bridgnell ("Dr. Bridgnell") at the CTC, who neither examined Plaintiff nor attempted to properly set the bone and, instead, just ordered a nurse to "place a half-cast on the left the hand without ensuring that the bone was adequately set." (Compl. at 8-9.) Dr. Bridgnell agrees that he did not examine Plaintiff, but that he reviewed Plaintiff's medical record and the radiologist's report of the December 10, 2009 x-ray. (Dkt. 53, Bridgnell Declaration ("Bridgnell Decl.") ¶ 2.) Dr. Bridgnell confirms that "[a] registered nurse applied the spica splint -- an orthopedic splint used to immobilize the thumb while allowing other digits freedom to move," and that he "checked the application afterward." (*Id.*)

Plaintiff claims that in 2010, three other doctors, who are not named Defendants, examined him. On January 19, 2010 and February 16, 2010, Dr. Pompan, an orthopedist, examined Plaintiff and stated there was "evidence of 'instability'" around the area of his broken thumb. (*Id.* at 9.) Plaintiff asserts that on February 1, 2010, Dr. Villalobos examined Plaintiff and stated there was only a partial healing of the broken thumb. (Compl. at 9; Gamboa Decl., Ex. A at 14.) Plaintiff asserts that at on March 26, 2010, Dr. Arthur Nathanson examined Plaintiff and stated that the

---

[7] As mentioned above, Plaintiff's claims against Defendants Will and Gee have been dismissed without prejudice under Federal Rule of Civil Procedure 4(m). *See supra* fn. 3.

thumb was "not at all healed or set." (Compl. at 9; Gamboa Decl., Ex. A at 16.) Plaintiff asserts that presently, he is "still in pain and left with a deformed thumb." (Compl. at 9.)

Meanwhile, the medical records provided by Defendants show that after the splint was applied, Plaintiff had other x-rays of his thumb taken in February 2010 and June 2010, and both were reviewed by radiologists. (Gamboa Decl., Ex. A at 16, 18-19.) As mentioned above, Dr. Nathanson reviewed Plaintiff's February 2010 x-ray on March 26, 2010. (*Id.* at 16.) In Dr. Nathanson's report dated April 2, 2010, he indicated as follows: "Compared to December [x-rays] I do not see any significant change in the chip fracture of the base of the proximal phalanx not withstanding more recent prior film from February . . . ." (*Id.*) However, another radiologist, Dr. Donald Catalano, reviewed Plaintiff's x-rays from June 2010, and he stated that there was "[e]vidence of a healed fracture on the phalangeal side of the first metacarpophalangeal joint with no other remarkable finding identified on three view study of the left hand." (*Id.* at 18.) In addition, the report stated: "No significant bony, articular or soft tissue abnormality identified in the left hand." (*Id.*) Finally, in a comparison of the findings made on March 26, 2010 and those made on June 25, 2010, Dr. Catalano stated: "Substantial improvement with evidence of nearly complete versus complete healing at the site of prior chip fracture extending into the first metacarpophalangeal joint compared to findings of 3/26/2010." (*Id.* at 19.)

## II.    Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

reasonable trier of fact could find other than for the moving party. *Id*. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50. However, "self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248. If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). A court may not disregard direct evidence on the ground that no reasonable jury would believe it. *See id.* (where the nonmoving party's direct evidence raises genuine issues of fact but is called into question by other unsworn testimony, the district court may not grant summary judgment to the moving party on the ground that direct evidence is unbelievable).

**III.     Evidence Considered**

A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). In support of Defendants' motion for summary judgment, declarations have been filed by Defendants' Attorney, Deputy Attorney General Jennifer Nygaard, well as Defendants Gamboa, Bowman, Bridgnell, and Walker. Defendants have attached copies of Plaintiff's medical records, which are

certified by SVSP Custodian of Records Rosa L. Martinez.  Attorney Nygaard has also attached pages from a certified copy of Plaintiff's September 17, 2013 deposition to her declaration.

Plaintiff verified his complaint filed on July 10, 2012 by signing it under "penalty of perjury."  On February 14, 2013, Plaintiff filed his opposition (to the motion for summary judgment), which was signed under "penalty of perjury" (Dkt. 58).  On February 28, 2014, Defendants filed their reply (Dkt. 59).  On March 27, 2014, Plaintiff filed his sur-reply, which was also signed under "penalty of perjury" (Dkt. 60).  Therefore, for the purposes of this Order, the Court will treat Plaintiff's complaint, reply, and sur-reply as affidavits under Rule 56 of the Federal Rules of Civil Procedure.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

**IV.   Deliberate Indifference Claim**

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  *See McGuckin*, 974 F.2d at 1059.

**A.   Serious Medical Need**

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "wanton infliction of unnecessary pain." *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104).  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment.  *Id*. at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

Defendants do not dispute that Plaintiff's broken thumb amounted to a serious medical

9

need. Instead, Defendants argue that Plaintiff fails to show that, during the course of their evaluations and treatment, they were deliberately indifferent to his serious medical needs. The Court must now move to the second step of the deliberate indifference analysis, the nature of the Defendants' responses to Plaintiff's serious medical need for treatment.

### B. Nature of the Defendants' Response

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In order to establish deliberate indifference, a plaintiff must show a purposeful act or failure to act on the part of the defendant and a resulting harm. *McGuckin*, 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Such indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provided medical care. *See McGuckin*, 974 F.2d at 1062. In order to prevail on a claim of deliberate indifference to medical needs, a Plaintiff must establish that the course of treatment the doctors chose was "medically unacceptable under the circumstances" and that they embarked on this course in "conscious disregard of an excessive risk to [Plaintiff's] health." *See Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004). A claim of mere negligence related to medical problems, or a difference of opinion between a prisoner patient and a medical doctor, is not enough to make out a violation of the Eighth Amendment. *Id.*; *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

#### 1. Nurses Walker and LaDuke

Plaintiff claims that Nurses Walker and LaDuke acted with deliberate indifference to his serious medical needs by ignoring his requests for treatment during his stay in Ad-Seg from December 5 through 10, 2009 and again from December 11 through 22, 2009. (Compl. at 7; Sur-reply at 2.) As mentioned above, Plaintiff reports that upon his arrival to the Ad-Seg Unit, Nurse LaDuke was notified of his injuries and subsequently filled out a CDCR Form 7362 on Plaintiff's behalf in order to request treatment from medical staff. (Compl. at 7.) Apparently, Nurse LaDuke

never submitted the form, and as a result Plaintiff's injury was not assessed immediately. (*Id.*) Plaintiff asserts that despite his repeated pleas for medical treatment while he waited in Ad-Seg, his injury was not treated until his disciplinary hearing officer noticed his swollen hand five days later. (*Id.*) Meanwhile, Defendants argue that Nurse LaDuke's alleged inadvertent failure to provide adequate medical care by failing to submit the CDCR Form 7362 is not sufficient to state a claim of deliberate indifference. (Dkt. 45 at 5 (citing to *McGuckin*, 974 F.2d at 1060.)) Defendants further argue that Nurse Walker was not deliberately indifferent to Plaintiff's serious medical needs. (*Id.* at 6.) Instead, they argue that record shows that Nurse Walker provided adequate care to Plaintiff. (*Id.*)

As mentioned above, a prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. *See McGuckin*, 974 F.2d at 1060; *Shapley*, 766 F.2d at 407.

Once the prerequisites are met, it is up to the fact finder to determine whether deliberate indifference was exhibited by the defendant. A plaintiff need not prove complete failure to treat. Deliberate indifference may be shown where access to medical staff is meaningless as the staff is not competent and does not render competent care. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (summary judgment reversed where medical staff and doctor knew of head injury, disregarded evidence of complications to which they had been specifically alerted and without examination prescribed contraindicated sedatives). Such indifference may also appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provide medical care. *See McGuckin*, 974 F.2d at 1062 (delay of

11

seven months in providing medical care during which medical condition was left virtually untreated and plaintiff was forced to endure "unnecessary pain" sufficient to present colorable section 1983 claim).

Here, Plaintiff claims to have suffered pain because he was not provided with immediate treatment for his broken finger by Nurses Walker and LaDuke. Specifically, Plaintiff claims that these Defendants delayed treatment by failing to ensure that his injury was promptly examined by a doctor. As an initial matter, Plaintiff has failed to provide sufficient proof that the delay was because of a "purposeful act or failure to act on the part of [Nurses Walker and LaDuke]." *McGuckin*, 974 F.2d at 1060.

First, Plaintiff claims that Nurse LaDuke failed to submit the CDCR Form 7362 on Plaintiff's behalf in order to request treatment from medical staff; however, Plaintiff fails to allege that Nurse LaDuke *deliberately* chose not to submit the form. At most, her actions would have amounted to an isolated occurrence of neglect, which does not rise to the requisite level of unnecessary wanton infliction of pain. *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for aspirins and antacids to alleviate headaches, nausea and pains is not constitutional violation; isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to level of unnecessary and wanton infliction of pain).

Second, Plaintiff provides only conclusory allegations that Nurses Walker and LaDuke failed to respond to his requests for treatment for the pain he experienced from December 1 through 5 and again from December 11 through 22. Plaintiff does not specifically allege when he spoke to these Defendants, what he told them about his condition, what their responses were, and how they ignored his requests for treatment. Thus, Plaintiff has not sufficiently linked Defendants Walker and LaDuke to the alleged wrong. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (plaintiff must link each named defendant to his allegations of wrongdoing -- he must allege specific facts showing how each defendant actually and proximately caused deprivations of his constitutional rights). In addition, as to Plaintiff's claim that Nurse Walker ignored his requests for treatment during the December 11 through 22 period, the record shows that Nurse Walker was aware that

Plaintiff was, in fact, receiving treatment for his injury. Nurse Walker was present during Plaintiff's December 11, 2009 appointment with Dr. Gamboa. (Walker Decl. ¶ 4.) Nurse Walker understood, based on Dr. Gamboa's diagnosis, that Plaintiff had sustained a sprain and had been prescribed ibuprofen and Tramadol for the pain. (*Id.*) Defendant Walker was also aware that an x-ray had been taken of Plaintiff's hand. (*Id.* ¶ 2.) Therefore, Plaintiff has failed to raise a triable issue of fact that Nurses Walker and Laduke were responsible for any delay in providing treatment for Plaintiff's injury.

Lastly, even if Nurses Walker and LaDuke were responsible for the delay in providing Plaintiff with treatment for his injury, Plaintiff has failed to show that the delay was deliberate indifference in the circumstances of this case, because no substantial harm resulted from their actions of delaying treatment for five days from December 5 through 10 and again for eleven days from December 11 through 22. *See Wood*, 900 F.2d at 1335 (delay of treatment of over one month was not actionable because no substantial harm resulted); *cf. Shapley*, 766 F.2d at 407 (delay of one year in providing knee surgery for inmate, resulting in serious aggravation of injury and permanent impairment, may be actionable). Had Nurses Walker and LaDuke known that there was a substantial risk that Plaintiff's injury would worsen without receiving immediate treatment, such a delay may have amounted to negligence, but is not enough to establish deliberate indifference. *See Frost v. Agnos*, 152 F.3d 1124, 1130 (alleged delays in administration of pain medication, treatment of a broken nose, and providing plaintiff with a replacement crutch may have amounted to negligence but were not enough to establish deliberate indifference).

Even viewing the evidence and the inferences drawn therefrom in the light most favorable to Plaintiff, no reasonable jury could return a verdict for Plaintiff against Nurses Walker and LaDuke. Therefore, Plaintiff has failed to raise a triable issue of fact that Nurses Walker and LaDuke were deliberately indifferent to his serious medical needs. Accordingly, Defendants' motion for summary judgment is GRANTED as Plaintiff's claim against Nurses Walker and LaDuke.

    **2.**    **Dr. Bowman**

Plaintiff claims that Dr. Bowman acted with deliberate indifference to his serious medical need on December 10, 2009 when he ordered an x-ray of Plaintiff's injured hand, sent Plaintiff back to his cell without further examination, and failed to review the x-ray upon the results becoming available. (Sur-reply at 2-3.) First, the record shows that the parties agree that Plaintiff was never actually physically examined by Dr. Bowman. However, it appears that Plaintiff is under the assumption that Dr. Bowman's actions still amounted to a mis-diagnosis of his injury because no treatment was given on December 10, 2009. (*Id.*) Plaintiff was examined by Nurse Walker on December 10, 2009, who contacted Dr. Bowman about Plaintiff's injury. (Bowman Decl. ¶ 3.) Dr. Bowman reports that he then ordered an x-ray of Plaintiff's hand, which according to standard practice was taken on-site at SVSP and then sent to an off-site radiologist for review. (*Id.*) Dr. Bowman contends that he would not have been expected to review the x-ray results himself. (*Id.*) He states that it was appropriate for Plaintiff to be sent back to his cell while the results were compiled, and that had the radiologist found an urgent concern in the film, a doctor would have been notified. (*Id.*) Finally, the record shows that the radiologist report would not have been immediately available for Dr. Bowman's review on December 10, 2009 because it was electronically signed seven days later, on December 17, 2009. (Gamboa Decl., Ex. A at 5.)

Based on the record, it does not appear that Dr. Bowman -- who, again, never physically examined Plaintiff -- made *any* diagnosis of Plaintiff's condition. Therefore, Plaintiff has failed to raise a triable issue of fact that Dr. Bowman was responsible for providing *any* diagnosis or *mis-diagnosis* of Plaintiff's injury. However, even if Dr. Bowman *had* failed to treat or mis-diagnosed Plaintiff's condition, this would not defeat summary judgment as "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106; *Toguchi*, 391 F.3d at 1060-61 (claim of medical malpractice or negligence insufficient to make out Eighth Amendment violation); *Anthony v. Dowdle*, 853 F.2d 741, 743 (9th Cir. 1988) (no more than negligence stated where prison warden and work supervisor failed to provide prompt and sufficient medical care). Because there is no evidence that any alleged failure to treat or mis-diagnosis was purposeful, Dr.

14

Bowman was, at most, negligent, which does not rise to the level of deliberate indifference. *See id.*

Even viewing the evidence and the inferences drawn therefrom in the light most favorable to Plaintiff, no reasonable jury could return a verdict for Plaintiff against Dr. Bowman. Therefore, Plaintiff has failed to show a triable issue of fact that Dr. Bowman was deliberately indifferent to his serious medical needs. Accordingly, Defendants' motion for summary judgment is GRANTED as to Plaintiff's claim against Dr. Bowman.

### 3. Dr. Gamboa

Plaintiff asserts that Dr. Gamboa acted with deliberate indifference towards his serious medical need on December 11, 2009 when he diagnosed Plaintiff's thumb injury as a sprain before the x-ray results became available. (Compl. at 7-8, 24.) Plaintiff alleges that as a result, Dr. Gamboa did not provide him with adequate treatment to alleviate his pain. (Compl. at 8.)

Dr. Gamboa agrees that he saw Plaintiff on December 11, 2009, at which time he diagnosed Plaintiff's thumb injury as a sprain and prescribed ibuprofen in order to reduce inflammation and relieve Plaintiff's pain. (Gamboa Decl. ¶ 5.) Plaintiff asserts that he disagreed with Dr. Gamboa's prescribed course of treatment, and suffered from considerable pain as a result. However, Dr. Gamboa contends that in his professional opinion, alternative medication was not indicated at the time that he evaluated Plaintiff, especially given that Plaintiff was already prescribed another medication for pain, Tramadol. (*Id.*)

As mentioned above, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. *Toguchi*, 391 F.3d at 1058. It seems that Plaintiff is alleging that Dr. Gamboa should have given him stronger pain medication before sending him back to his cell. Dr. Gamboa states in his declaration that it is standard opinion in the medical community that NSAIDs like ibuprofen should be the first line of treatment for a sprain. (Gamboa Decl. ¶ 5.) In order to prevail on a claim involving choices between alternative choices of treatment, Plaintiff must show that the course of treatment Dr. Gamboa chose was medically unacceptable under the circumstances, and that he chose this course in conscious disregard of an excessive risk to

Plaintiff's health. *Toguchi*, 391 F.3d at 1058; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Farmer*, 511 U.S. at 837). Plaintiff has presented no probative evidence to rebut Dr. Gamboa's statement that ibuprofen was an acceptable course of treatment for a sprain. Furthermore, Plaintiff has not shown that Dr. Gamboa chose this course of treatment in conscious disregard of an excessive risk to Plaintiff. Based on these facts, Plaintiff cannot prevail on a claim involving alternative choices of treatment, and thus he fails to raise a triable issue of fact that Dr. Gamboa's choice to prescribe ibuprofen rose to a level of deliberate indifference to his serious medical needs. *See id.*

Furthermore, Plaintiff was examined by Dr. Gamboa again on December 22, 2009, at which time Dr. Gamboa had received the x-ray results and determined that Plaintiff had suffered a fracture, and not a sprain. (Gamboa Decl. ¶ 6.) After making this determination, Dr. Gamboa immediately referred Plaintiff to the CTC for a splint. (*Id.*) Thus, Plaintiff seems to also allege that Dr. Gamboa mis-diagnosed Plaintiff's condition as a sprain. However, such an allegation still would not defeat summary judgment because there is no evidence that any alleged mis-diagnosis was purposeful. As stated above in the Court's analysis involving Dr. Bowman, any such mis-diagnosis by Dr. Gamboa would at most, amount to negligence, which does not rise to the level of deliberate indifference under the Eighth Amendment. *See Estelle*, 429 U.S. at 106; *Toguchi*, 391 F.3d at 1058-60 (9th Cir. 2004) (summary judgment in favor of defendant doctor appropriate where evidence showed doctor did not believe that Cogentin use presented a serious risk of harm to plaintiff, and where there was no indication in the record that doctor was aware of a risk that plaintiff was suffering from Klonopin withdrawal; claim that doctor failed to conduct a differential diagnosis did not amount to more than negligence and claim that doctor failed to employ emergency treatment was conclusory).

Accordingly, because Plaintiff has not raised a triable issue of fact as to whether Dr. Gamboa acted with deliberate indifference to his serious medical needs, Defendants' motion for summary judgment is GRANTED as to his claim against Dr. Gamboa.

    **4.**    **Dr. Bridgnell**

16

Plaintiff alleges that Dr. Bridgnell acted with deliberate indifference towards his serious medical need on December 22, 2009 by instructing a nurse to place a spica splint on his left hand without personally examining him or attempting to set his broken thumb bone. (Compl. at 8-9.)

As discussed above, a plaintiff's showing of no more than a difference of medical opinion as to the need for one method of treatment over another is insufficient to establish deliberate indifference. *Toguchi*, 391 F.3d at 1058; *cf. Jackson*, 90 F.3d at 332 (if it were proved at trial that doctors denied a prisoner on dialysis a kidney transplant because of personal animosity rather than in the exercise of honest medical judgment, and that the delay in performing the transplant was "medically unacceptable," that would establish deliberate indifference to a serious medical need). Here, Plaintiff has not presented any evidence that Dr. Bridgnell's decision to have a nurse affix the splint and to check the application afterward -- rather than affixing it himself -- was medically unacceptable. Furthermore, Plaintiff has not presented any evidence that Dr. Bridgnell's treatment decision was chosen in conscious disregard of an excessive risk to Plaintiff. Indeed, while Plaintiff claims his thumb remained "deformed" after being treated, a radiology report dated June 25, 2010 showed "[e]vidence of a healed fracture," and "substantial improvement" at the site of his injury. (Gamboa Decl., Ex. A at 18-19.) Based on these facts, Plaintiff cannot prevail on a claim involving alternative choices of treatment, and thus he fails to raise a triable issue of fact that Dr. Bridgnell's choice of treatment rose to a level of deliberate indifference to his serious medical needs. *See Toguchi*, 391 F.3d at 1058 (showing of *nothing more* than difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference).

Accordingly, because Plaintiff has not raised a triable issue of fact as to whether Dr. Bridgnell acted with deliberate indifference to his serious medical needs, Defendants' motion for summary judgment is GRANTED as to his claim against Dr. Bridgnell.

**C.     Alternative Grounds: Qualified Immunity**

Defendants argue, in addition, that summary judgment is warranted because, as government officials, they are entitled to qualified immunity from Plaintiff's Eighth Amendment deliberate

17

indifference claim.  Because the Court finds that no constitutional violation occurred in regards to the claims against Defendants, it is not necessary to reach their qualified immunity argument.

## CONCLUSION

For the foregoing reasons,

1. Defendants' motion to strike Plaintiff's sur-reply is DENIED.  (Dkt. 61.)

2. Plaintiff's motion for reconsideration and renewed motion for appointment of counsel are DENIED.  (Dkts. 44, 65.)

3. Defendants' motion for summary judgment (Dkt. 45) is GRANTED as to Plaintiff's deliberate indifferent claims against Defendants Bowman, Gamboa, Bridgnell, Walker and LaDuke. When a final judgment is entered, it will include a judgment in favor of these Defendants and against Plaintiff.

4. Defendant Morring has not joined the other Defendants in their motion for summary judgment.  Therefore, Plaintiff's excessive force claim against Defendant Morring is still pending. The Court notes that this case has been pending for over two years and the events at issue occurred over four years ago.  If the case must go to trial, even further delay in resolution will be incurred, as will expenses.  A record already exists which includes evidence of detailed medical records of the injuries suffered.  Having considered all of these factors, the Court finds that it is in the best interests of the parties and judicial efficiency to REFER this action to a Magistrate Judge for court-ordered settlement proceedings.

The Northern District of California has established a Pro Se Prisoner Settlement Program. Certain prisoner civil rights cases may be referred to a magistrate judge for a settlement conference. The Court finds that a referral is in order because Plaintiff's excessive force claim is still pending. Thus, this case is REFERRED to Magistrate Judge Nandor Vadas for a settlement conference.

The conference shall take place within **ninety (90) days** of the date of this Order, or as soon thereafter as is convenient to the magistrate judge's calendar.  Magistrate Judge Vadas shall coordinate a time and date for the conference with all interested parties and/or their representatives

1  and, within **ten (10) days** after the conclusion of the conference, file with the Court a report
2  regarding the conference.

3         The Clerk of the Court shall provide a copy of this Order to Magistrate Judge Vadas.

4         5.    As mentioned above, as of September 3, 2014, Plaintiff is no longer being held in
5  custody at SVSP.  On September 9, 2014, Plaintiff wrote to the Court in order to update his address.
6  Dkt. 67.  The Clerk has since updated Plaintiff's address as: 3000 Howe Avenue #48, Sacramento,
7  California, 95821.  The Clerk shall send Plaintiff's copy of this Order to his updated address.

8         6.    Also, as mentioned above, Plaintiff has informed the Court that he is in the process
9  of obtaining legal representation on his own accord.  Dkt. 67 at 1.  No later than **fourteen (14) days**
10  of the date of this Order, Plaintiff shall inform the Court whether he has obtained legal
11  representation.  If Plaintiff has been successful in doing so, he shall also provide the name and
12  contact information of his attorney.

13         7.    This Order terminates Docket nos. 44, 45, 61, and 65.

14  IT IS SO ORDERED.

15  DATED: September 24, 2014

16                                   YVONNE GONZALEZ ROGERS
                                 UNITED STATES DISTRICT COURT JUDGE